Good morning. May it please the Court. My name is John Williams and I represent Dr. Gaur, the appellant in this case. I intend to reserve five minutes of my time for rebuttal. Thank you. I'd like to spend my time this morning putting a finer point on the two central issues in this appeal. And those are this, the influence of Dr. Riggs on Dr. Jove, and then the nature of that influence. Can I ask, beginning with the first point? Sure. I was a little, I gather that, and I looked at the complaint on this, you're not contending that there was a separate denial of promotion attributable to Judge Riggs with the first delay in the decision? That's correct, Your Honor. You're looking at the later decisions and then trying to see what Dr. Riggs' influence on those later decisions was? That it was a continuum of conduct. That's correct. Okay. That's correct. It's that stronger grounds on the first, except you'd have a limitations period problem. Correct. Correct. And so let's talk about the influence that Dr. Riggs had on Dr. Jove generally. We know from the record, for example, with respect to Dr. Aboody's promotion, that Dr. Riggs continued to exercise influence over that decision even after he was no longer director. I believe the characterization that Dr. Jove used to talk about the influence of using Dr. Danks' grant in order to assist Dr. Aboody as academic extortion. And yet eventually Dr. Jove approved that promotion anyway, notwithstanding that pressure. Dr. Riggs, as far as he had any influence, seemed to be negative. Actually, Dr. Riggs' influence with respect to Aboody was very positive. He was trying to convince Dr. Jove that there was a way to allow Dr. Aboody to be promoted by using this grant from this other research professor. And the same is true with Dr. Bowers. But isn't that a distinction between Dr. Aboody and Dr. Gower? That is, that there was this other grant, and even though, as I understand it, she didn't obtain the grant, but the grant was effectively transferred to her, so she got credit for it, right? Correct. And that grant was set to only have another year as well. But yes, that is a distinction, and I think that the inference can be drawn from that distinction, that you have a situation here where Dr. Riggs is trying to influence Dr. Jove's decision as it relates to Aboody to find any way to find grant support for Dr. Aboody, even though Dr. Aboody doesn't have her own grant support, even if it includes taking a grant from another research professor, Dr. Danks, which is set to run out in one year. The relationship of Dr. Riggs in this situation is not remote, because remember, he was in charge of the promotion process to begin with, and it was Dr. Riggs that decided to put this promotion off. Now, the committee had recommended delay it for one to two years and then reevaluate, but Dr. Riggs made his own decision. He said, you know what, I'm only going to put it off until the September of the following year. Dr. Riggs himself didn't put it off. He just made a recommendation to Jove, because it was Jove who made the decision. Well, no, originally it was Dr. Riggs that made the decision with respect to the initial. I thought not. I thought even that decision was actually a recommendation to Jove rather than a decision as such. There is some overlap there in the end of 2007, but Dr. Riggs is still the director at that time, and it's ultimately his decision. And he makes the decision to delay the promotion process. But in any event, he got the amount of time that the committee suggested. I mean, Dr. Riggs may have just said, you know, I'm getting out of here, so I'm going to suggest a temporary delay, and then you decide. And that's essentially what happened. My point is, is that he didn't exactly give the time the committee recommended. But he didn't get in the way of it either, and it happened. It did happen. It was a shorter period than what the committee had recommended. What actually happened was the full amount of time the committee recommended in the end, or more. The committee had recommended additional time. I know. What I'm saying is what he actually got in terms of extensions, as it turned out. I see ultimately is what you're saying, as to what happened with the subsequent extension. Yes. Well, I guess the only nuanced point that I would say as to that would be this. When Dr. Riggs extended the time, he extended it to the September of the following year. Suppose there was something. I mean, if you had evidence that Dr. Riggs said, you know, I hate Indians, and I'm going to make sure this guy doesn't get promoted. You don't have that. I mean, in my opinion, you don't have that. All the struggle around Dr. Riggs is whether to get in personnel files of additional comparators as to whom Dr. Riggs made the decisions. Is that right? That's correct. There is no direct evidence of discriminatory animus. It's circumstantial. What is the content? I mean, what would that demonstrate? The most it would demonstrate was some possible inferences of disparate treatment. I mean, not even discriminatory treatment, but different treatment from which motives would have. . . Then you'd have to draw a motive with regard to Dr. Riggs, and then you'd have to project that motive forward as being influential on Dr. Joe's ultimate decision. Right? Is that where we are? I think it's much more concise than that, Your Honor. And let me give you an example. At the second transcript of the EOR at 569, there's an email exchange in September of 2007 where Dr. Riggs, actually Dr. Joe, asks Dr. Riggs about Dr. Gower. And Dr. Riggs says at that time, I don't think it matters how his seminar went. He's doing some interesting stuff, but he has failed to get funding, period. This has to be a requirement. I think he should not get tenure based upon that, period. And Dr. Joe's response agreed. Now, this is in September of 2007, and the question would have to be asked at that time. If Dr. Riggs knew about the Department of Defense funding, grant funding, that Dr. Gower had at that time, why didn't he tell him that? He had it in the past. He had it, and it was continuing at that time. I thought it was done by then. No, it wasn't. It was for one year, but it had a renewal period, and it had renewed. So at that time, there was no mention of the Department of Defense funding at all. And the jury could have explored that and said, why did Dr. Riggs, who is influencing Dr. Jove, in fact, Dr. Jove is asking him for his opinion, why did he not mention any grant funding that Dr. Gower had secured? That evidence did come in. In other words, this is ultimately about an evidentiary ruling, right? Correct. So the evidence that you just described was before the jury. That's right. But from that evidence, the jury only got half the picture. They couldn't further explore what Dr. Riggs' history was and whether he harbored discriminatory animus towards professors of Asian descent by treating them differently and having a different set of criteria for purposes of these promotions. Let me ask you a question. In terms of the professor series, it seemed to me that given that Dr. Gower did not have the significant NIH grant that was required in order to get promoted, that extending the decision, the time to make the decision, worked in Dr. Gower's favor, right? So that it gave him more time to try to get the grants that would support his promotion. It could objectively, but I think that the argument here is that the narrative as to Dr. Gower was already written, and it was written early in this case by Dr. Riggs. When he communicated to Dr. Jove that this extension, that he would support the first extension if it was the terminal year for Dr. Gower, and that Dr. Riggs himself said, look, the problem with Dr. Gower is he can't attract funding, and he should not be promoted on that basis alone. That's back in 2007. Isn't that an objective criteria that applied to everybody, that they had to attract funding? Well, not exactly. It didn't apply objectively to ABUTI, and there were examples that could have been brought before the jury with respect to Dr. Sinold and Dr. Longmate. Didn't the ABUTI evidence come in? No? The ABUTI evidence came in, but the Sinold and Longmate evidence did not come in. I want to clarify something. You said something about the narrative about Dr. Gower had been written long ago by Dr. Riggs that he couldn't raise money. And I don't understand how the comparator evidence that you suggest was improperly excluded. How exactly does that fit with this statement you just made about the narrative of him not being able to raise money? What is it that you think these comparators that didn't come in, what is it you think they will prove that you didn't get to prove? They would have allowed the jury to consider why it is that Dr. Riggs made that characterization in the first place, why it is that he did not first communicate to Dr. Because those people didn't have funding and did get tenure? Correct. For example, Dr. Longmate and Dr. Sinold. Dr. Jove came in with the, and I don't know whether Riggs knew this at the time, 2007, but Dr. Jove came in and said, you know, we have to straighten all these. He sort of recognized that there had been inconsistent standards. Correct. And he said we're going to straighten that out and we're going to have consistent standards and I'm going to delay decisions until we have those standards. And he did delay the decisions. And yet Riggs continued to influence the promotion process even after Dr. Jove took over. But my understanding is that Jove at that point decided that people who didn't have funding weren't getting tenure and he demoted people who had been around a very long time in pursuit of that policy. And whatever influence Riggs may have had didn't influence that. The only counterexample you have which you keep harping on is Abboudi. And Abboudi just, I don't know what kind of outlier thing that was. I mean, I don't know what the circumstances were, but I don't think you're going to win the case in that one example. But in general, was Jove actually in pursuit of this policy? Did he actually apply it? The answer seems to be yes, right? Well, our position would be that the jury could find, if they had this evidence that was excluded, that Riggs' influence on Jove continued all the way through this termination. What it could prove is that Riggs wasn't consistent in this policy. And that Jove didn't like it and decided he was going to be consistent. Well, that's what Jove said. But I think the jury could have found that that influence pervaded even after Jove took over, especially when you look at the initial discussions that were had with Riggs. I mean, he wanted to treat people differently with regard to the impact of their availability of independent funding. And Jove didn't do that. What Jove did with respect to Abboudi suggests that he did. Well, she did have funding. Well, it wasn't. About whether it was their, about, I don't know, about, you have a story about the fact that it wasn't really her funding, but she did have funding. That's not my story. What Dr. Jove said himself was he thought it was academic extortion that she was able to use this funding from this Dr. Danks, this out-of-state professor. That was not what Dr. Jove said. So he's making an expression right there. In terms of their interest in having people who have money, I mean, she didn't, maybe she didn't get the money, but she had the money. I mean, I suppose that if Gara was similarly situated to her, i.e., he had some grant he could have gotten transferred to him and they didn't let him, then he'd have a problem. But that isn't what happened. It demonstrates a different level of criteria that are being applied. So with respect to Abboudi, there's, the threshold is lower. It depends what the criteria are. It depends whether the criteria are having the money or independently getting the money. Or finding money from somebody else. When you have a situation when somebody doesn't have funding themselves. What's the facts with respect to Sinold and Longmate? Are those the only two? And is there Chu as well? There's Chu and there's Belindarin as well. Okay, so tell us quickly. What are the facts with respect to those folks? Dr. Sinold and Longmate were promoted without grant funding of their own. Dr. Chu. Did they have grant funding from elsewhere like Abboudi? No. Okay. Dr. Chu was promoted but only after getting the gold standard, the R01 grant funding. And Dr. Belindarin had multi-year funding but it wasn't an R01 funding and ultimately was not promoted. About him having DOD funding in September of 2007. My understanding of the record is that he had the funding from DOD in 2003 and it had been spent by September 2007. Is that incorrect? I'll have to look again, Your Honor. I'll have to check again. He had applied for additional funding with respect to DOD and also the National Science Foundation. I will say this too. The influence of Dr. Riggs and I think a jury could have inferred this had they been able to hear this other evidence with respect to the Komen Foundation grant that was pending at the time in September of 2009. Now, mind you, it wasn't finalized then but there again is a contrast with Abboudi. And if you can look at where all of this started, the key criteria that Dr. Riggs stressed and said Gower should not be promoted because he doesn't have grant funding and then you have Dr. Jove refusing to even sign off on the Komen grant, to even give it as approval so he could get that funding. And Dr. Jove later admitted that had he received that Komen grant that that would have met the funding requirement, the grant funding requirement. I see I've used all my time. I'll save some for rebuttal. Thank you. Thank you. Good morning. I'm Joseph Farrell, appearing on behalf of the City of Hope and the Beckman Research Institute. May it please the Court. I want to address a couple of facts up front. First of all, with regard to the DOD grant, as Judge Perzan correctly observed, that grant was made in 2003 and expired in 2004. It was not in effect either in 2007, 2008 or 2009. The record is crystal clear and Dr. Gower admitted on cross-examination he had no funding in 2007 and he never had any funding thereafter. The issues with Dr. Abboudi and the merits of her grants were, the debates about her grant, were fully tried in this case. That is not something that was excluded in any way, shape or form. Similarly, the debate about the Komen grant and whether or not that would have supported Dr. Gower was fully tried in this case. Is there a reason that Dr. Jove refused to sign off on the Komen grant? As the record reflects, and this is undisputed, he refused to sign off on the grant because it was not going to be granted until 2010. And if he signed off on the grant, he had to represent the Komen Foundation, that Dr. Gower would in fact have an independent laboratory at City of Hope in 2010. Dr. Gower's contract expired in September of 2009 and the determination had been made that he had been extended multiple times and that he either would have funding by September of 2009 or he would not. The Komen grant was a last-minute effort by Dr. Gower to get some funding application in place, not actual funding. Dr. Gower did have a number of other grants he had applied for that might have been granted before September. And Dr. Jove was allowing him to pursue those grants. He simply would not sign off on an application for something he could not commit to. Wouldn't you agree, though, that if these other comparators had come into the evidence, the trial would have been a different trial and the arguments would have been different, seeing Seinold, Longmate, Belladurian and Chu? I would like to point out a couple of things on that because I don't agree. First, the record that was before the Court on Seinold and Longmate does not contain any facts about what happened with them. What we know is that the only thing that was in the record was that they were promoted in 2001 for one of them and 2005 for the other. There was nothing, no competent evidence before the Court about the status of their grants. And ---- But that, I mean, that's an offer of proof problem? It is, Your Honor, because what we're talking about here is whether or not ---- But your position, as I understand it, was it didn't matter what it showed. It wasn't about, it was about Riggs, not Jove, and it didn't make a difference. So what was the ---- I would agree. And I have two sort of distinct points there. First, a lot of assertions have been made about what the evidence would have been, but none of that was put before Judge Otero for him to consider on the motion in limine. So he didn't have that in front of him, and it is not an abuse of discretion for him to make a ruling on the record he actually had. There was nothing to show similarly situated individuals. All it's ---- It's just unclear. You're saying the only evidence given to the trial judge in the motion in limine was that these folks were promoted, but there was no evidence presented with respect to what their grant funding? Right. And the record in front of this Court doesn't have that in it. In fact, the citation in Appellant's brief is to the judge's decision, and the judge's decision doesn't recite those facts. So I don't think that's properly before the Court, and it wasn't properly before Judge Otero. He couldn't make that decision. Second, what we do have are substantial intervening facts. First of all, it is crystal clear in the record. In fact, in opening statement, counsel for Appellant stated Dr. Joe made the decision to postpone Dr. Gower's promotion consideration. It was not Dr. Riggs. So Dr. Riggs' influence there was very limited. And that influence ---- Probably wasn't limited, but it wasn't the final decision maker. It seemed to be a responsible recommendation. Okay. Well, I agree he did make that recommendation, but please keep in mind that the record here, the e-mail that counsel referred to in argument, EOR 569, that series of e-mail has to be read in context. The e-mail starts with Dr. Jove. He writes to Dr. Riggs. He says, could you tell me what happened at this seminar, because I couldn't make it. And he finishes it saying, I'm not terribly impressed with Dr. Gower's record in publication or fundraising. Dr. Riggs responds saying, I wasn't there either, but he doesn't have any funding. It wasn't Dr. Riggs influencing Dr. Jove. It was Dr. Riggs agreeing with what Dr. Jove said. The totality of the alleged influence are three e-mails, all in 2007. Now, counsel is arguing today that we should infer, because Dr. Riggs advocated on behalf of another professor, that he somehow influenced the decision on Dr. Gower. There is nothing in the record about Dr. Riggs communicating with Dr. Jove at all. He gave some advice to Gower. He was somewhat discouraging to Gower. He spoke to Gower, but there is nothing in the record about him attempting or influencing. Funding Gower later on? In the record, he in fact gave Dr. Gower a personal loan, which he testified at trial he had no expectation of repayment and was never repaid. Okay. So in your motion to exclude evidence, you say that Dr. Timothy Seinhold, a white co-worker, was promoted to associate professor in 2005 despite not having an extramural grant. Is that true? I will take your word for it, Your Honor. You're reading my submission. You wrote it. Yes. You don't dispute. I mean, you say that Dr. Gower claims that Dr. Timothy Seinhold, a white co-worker, was promoted despite not having an extramural grant. Right. But you don't say anywhere that's not true. No, I don't, because, Your Honor, at that point I'm not trying to resolve a disputed fact. What I'm saying to the Court is here's the totality of what they're saying. He says that happened. He didn't submit any evidence to support that. Well, I know, but I'm just saying if it was excluded, that's why, I mean, on the basis of Dr. Jove wasn't the director at the time. That's correct. That's the basis for exclusion. That is. I mean, if it had been, if the motion limited and not been granted, then obviously they would have to meet their burden of proof. Right. And, Your Honor, what the trial court noted here and what is clear in the record is that Dr. Gower did not attempt to argue these folks were similarly situated other than if Dr. Riggs influenced the decisions of Dr. Jove concerning Dr. Gower. They did not attempt to say that this was otherwise admissible. So the key question is, what did you say in your motion to eliminate that Dr. Gower claims that Dr. Timothy Sennelt was promoted despite not having an extramural grant that was? I don't know why any of this matters. I mean, they were not, the motion to eliminate was not on the basis that there was an inadequate showing that he didn't have extramural grants or that they were treated differently. It wasn't a showing that it didn't matter.  I agree, Your Honor. I was simply addressing the point that counsel raised saying that there was this evidence. And the evidence that was before the Court was very limited. With regards to the basis of the ruling, it's very straightforward. And the record here is very clear. There is no question that Dr. Jove made the decisions. There is also no question that there was a change in process and procedure between Dr. Riggs and Dr. Jove. The testimony is very clear that funding was at risk at the institution and Dr. Jove was coming in as the director. He froze the promotion process for everybody. That's uncontested. And he then implemented a process where he demanded that there be funding. And there was no evidence submitted to the trial court that after that change in who did not have an active grant. Anyone at all. There was absolute consistency. Could you just go back? I think you covered Seinold, but you also said Longmate was, there's no evidence in the record of Longmate's failure to get grant funding. What about Baledarian and Shue?  Dr. Baledarian, there was a reference in the briefing by appellant to an exhibit 153. That was not before the court and it's not in the appellant record. It's an exhibit that was never offered. With regard to Dr. Shue, it's a very curious case for appellants to rely on here. Dr. Shue, what the record does show is that she had 15 years at the institution, most of it under Dr. Riggs, and that when she did get grant funding, she did advance. So she disproves their theory rather than proves their theory. Is she of the same, she's Asian? She's Asian, yes. All right. It's Dr. Fong Fong Shue. So in this case where they're arguing a cat's paw theory, what they would need to show is that Dr. Riggs made some recommendation or had some influence over the decision. That he took some action that was a proximate cause of Dr. Jove's decision not to advance Dr. Gower and to terminate his employment. The only evidence that even remotely touches on that are things that took place in 2007 and don't concern the ultimate decision in this case. Further, the argument that was made by appellant that Dr. Jove was placed on some deferral track has no basis in the record. He was in fact deferred, as was everybody else at that time, briefly. There is nothing in the record that says anyone who was deferred was disadvantaged. Only Dr. Gower says I was disadvantaged and then they argue from that that there was some secret deferral track. Just one more quick question about these four comparators. Yes. All the decisions, the relevant decisions with these four comparators, were they all made by Dr. Riggs? They were all made by Dr. Riggs and predate Dr. Jove. Predate, they're pre-Dr. Jove, right? Right. Dr. Jove came to the institution in the fall of 2007. Okay. So they don't prove anything with respect to this linkage between Riggs and Jove and influence on Jove by Riggs. All they prove, if they prove anything, is a kind of disparate treatment, basically. What they would be offered to do is try to infer that Dr. Riggs disparately treated those individuals. Right. Correct. Okay. But there is no connection to Dr. Jove. He did not participate in those decisions. He wasn't even there. But what Dr. Riggs did do was be inconsistent in the application of this funding issue. That is what they attempted to prove. And certainly Dr. Jove testified it was very important to him to not be inconsistent in the application of that. And, in fact, the testimony from Dr. Riggs was that the institution was running on a very large volume of income from patents that Dr. Riggs actually was responsible for. And it was able to be a little bit more liberal in allowing development of the professors because they had adequate funding. As Dr. Riggs testified, that funding was at substantial risk. And the institution said we've got to knuckle down here. We've got to be disciplined. We can't afford to do this. We've got to use the patent funding very wisely. And we've got to have professors who will support themselves. So, in a way, your argument really is sort of we don't think any of this establishes what the plaintiff says it establishes. But even if it came in, it's not really inconsistent with our theory of the case because our theory of the case is that Riggs did do things inconsistently for a variety of reasons he had that may not have been discriminatory. But he seemed to have lots of, you know, maybe idiosyncratic ways of handling these situations. But when Jove came in, he drew a bright line between the past and the future and said we're not doing that anymore. So that's your theory. Exactly, Your Honor. And that's why I think if this had come in, it still doesn't change the outcome. Because if it came in, our response to that is those were different times, different circumstances, different director. Look at what happened with the person who decided what was going to happen with Dr. Gower. All right. Thank you. You are out of time, but I'll give you a minute to reflect. Thank you, Your Honor. Back to Justice Smith's last question there. That would have been a jury argument that could have been made for sure that Dr. Riggs was simply inconsistent, that there was no discriminatory animus. But how could the jury ---- That's not the issue. The issue is whether he was discriminatory or whether he had animus, Dr. Jove changed the system. Well, the argument was made here that there were other reasons for Riggs to make those inconsistent decisions. But the jury should have been able to determine whether Dr. Riggs made those decisions for discriminatory reasons as well. And to the extent that we have Riggs continuing to influence Dr. Jove, even after Dr. Jove says, I'm wiping the slate clean, we know what he does with the booty. He calls it academic extortion because he's getting pressure from Riggs. We hear with respect to Dr. Bowers that Dr. Riggs is pleased that they found a niche for Dr. Bowers. So it's not as if he's completely out of the picture. They offered Dr. Gow the same niche. He just didn't take it. That is correct, Your Honor, because he wanted the promotion process to play out fully. I mean, they seem to really like the science that he was doing. That's the gist I got from the record, that they liked his science. They wanted him to stay on as a research professor. I don't think that's correct with respect to the letters of peer-reviewed letters of recommendation. Both Dr. Riggs and Dr. Jove in particular questioned the validity of those letters. So there was this reluctance to get to the other criteria and say, look, he's doing sufficient work. He's getting sufficient peer-reviewed letters. Okay, now let's focus on the funding issue. But they did offer him a research professorship, right? And he said no. And he said no. That's correct. Okay. If there are any further questions, I'll submit. All right. We'll take this case under submission. Thank you.
judges: Smith, Wardlaw, Berzon